THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TD srl, an Italian limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ITALIA GRANITE SUPPLY, LLC, a Utah limited liability company,<br><br>Defendant.<br><br>―――――――――――――――――<br><br>ITALIA GRANITE SUPPLY, LLC, a Utah limited liability company,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MEDITERRANEAN SHIPPING COMPANY (USA), a New York corporation; UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; DAVID & RUBY TRUCKING, LLC, a Utah limited liability company; and DOES 1–10,<br><br>Third-Party Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [30] DEFENDANT'S MOTION TO DISMISS AND MOTION TO TRANSFER VENUE**<br><br>Case No. 2:25-cv-00480-DBB-DBP<br><br>District Judge David Barlow |

The matter before the court is Third-Party Defendant Mediterranean Shipping Company USA's (MSC) Motion to Dismiss Third-Party Plaintiff Italia Granite Supply, LLC's ("IGS") Third-Party Complaint ("TPC") that includes an Alternative Motion to Transfer Venue Pursuant

1

to the Contractual Forum Selection Clause.[1] For the reasons below, the court grants in part MSC's motion.

## BACKGROUND

MSC is a foreign corporation that operates in the United States as an ocean transportation common carrier.[2] IGS is a Utah company that sources international stone slabs for countertops in custom homes.[3]

TD srl, an Italian limited liability company ("TD") sold sixty-one slabs of marble stone to IGS.[4] IGS paid a deposit for the marble slabs prior to their shipment to Utah.[5] The cargo of marble slabs was shipped under MSC SA[6] Sea Waybill No. MEDUL V650352 dated May 16, 2022 ("Waybill") from Volargne, Italy to Salt Lake City, Utah through the ports of La Spezia, Italy and Long Beach, California.[7] In the Waybill's terms and conditions, Clause 10.3 ("forum selection clause") states, in relevant part, as follows:

> 10.3 Jurisdiction – It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless **the carriage contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply**. The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.[8]

---

[1] Third-Party Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative Mot. to Transfer Venue Pursuant to the Contractual Forum Selection Clause ("Mot. to Dismiss"), ECF No. 30, filed Aug. 8, 2025.
[2] Compl. ¶¶ 3–4.
[3] Id. ¶¶ 1, 8.
[4] Mot. for Leave to file Joint Remand ("Mot. for Leave") 2, ECF No. 28, filed July 31, 2025; Opp'n to Mot. for Leave 7, ECF No. 31, filed Aug. 14, 2025.
[5] Mot. for Leave 2.
[6] MSC SA is the parent company of MSC USA. See Mot. to Dismiss 22.
[7] Notice of Removal ("Notice"), Ex. A ¶¶ 11–16, ECF No. 1, filed June 17, 2025.
[8] Mot. to Dismiss, Ex. A § 10.3 (emphasis added).

When the marble slabs arrived, IGS discovered that the slabs had been damaged and attempted to reject acceptance of them.[9] IGS also refused to pay its outstanding invoice with TD.[10]

On April 4, 2025, TD filed a Complaint for breach of contract against IGS in the Third Judicial District of Utah ("State Case").[11] On May 7, 2025, IGS filed a Third-Party Complaint in the State Case against Third-Party Defendant Mediterranean Shipping Company (USA) Inc. ("MSC") and others, alleging (1) negligence and gross negligence; (2) Carmack Amendment Liability; (3) Carriage of Goods by Sea Act ("COGSA") Liability; (4) Indemnification/Equitable Indemnification; (5) Negligent/Breach of Bailment; and (6) Contribution.[12] On June 17, 2025, MSC filed a Notice of Removal to this court.[13]

Contemporaneously with its Motion to Dismiss, MSC filed a Request for Judicial Notice with the Waybill as one exhibit and its terms and conditions as another.[14] In response, IGS filed an objection to the Request with its own version of the Waybill that it claims does not have the accompanying terms and conditions.[15]

## STANDARD

A motion to dismiss and a motion to transfer venue necessarily incorporate different legal standards. Because the court grants the motion to transfer venue, it must leave the resolution of

---

[9] Mot. for Leave 2.
[10] *Id.*
[11] Third-Party Pl.'s Compl. ("Compl.") was filed in Third Judicial District of Utah, Case No. 250902713.
[12] Opp'n 7.
[13] Notice.
[14] Mot. to Dismiss, Attach. 1.
[15] Opp'n, Attach. 5.

3

the motion to dismiss to the transferee court. Therefore, the applicable legal standard for a venue analysis, not for a motion to dismiss, is set forth below.

Generally, 28 U.S.C. § 1391 governs venue for "all civil actions brought in district courts of the United States" and 28 U.S.C. § 1406(a) permits a district court to transfer a case if it determines that it was filed in the "wrong" venue.[16] However, when a motion to change venue is based on a valid forum selection clause, 28 U.S.C. § 1404(a) governs, permitting a district court to transfer a case to "any district . . . to which all parties have consented" if doing so will best serve "the convenience of parties and witnesses" and is "in the interest of justice."[17]

The threshold question to resolve when evaluating a forum selection clause is whether to apply state or federal law.[18] "There is a distinction . . . between what law governs the enforceability of a forum selection clause and what law governs the interpretation of a forum selection clause."[19] "Enforceability of a forum-selection clause is governed under federal rather than state law."[20] This is so, in large part, because "enforcement—i.e., whether to transfer the case to another venue pursuant to the clause—implicates federal statutes, namely 28 U.S.C. §§ 1391, 1404, and 1406."[21] However, "courts have split over the question of whether the interpretation of forum-selection provisions is a procedural question governed by federal law or a substantive question governed by state law."[22]

---

[16] 28 U.S.C. § 1391(a)(1); 28 U.S.C. § 1406(a).
[17] *Id.* § 1404(a).
[18] *See Nw. Bldg. Components, Inc. v. Adams*, No. 22-cv-00790, 2022 WL 1689293, at *3 (D. Colo. May 26, 2022).
[19] *State ex rel. Balderas v. Real Estate L. Ctr., P.C.*, 430 F. Supp. 3d 900, 919 (D.N.M. 2019) (citing *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006)).
[20] *Nw. Bldg. Components*, 2022 WL 1689293, at *3 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988)).
[21] *Delta Pegasus Mgmt., LLC v. Netjets Sales, Inc.*, No. 2:21-cv-00393, 2022 WL 4536757, at *4 (D. Utah Sept. 28, 2022).
[22] *Nw. Bldg. Components*, 2022 WL 1689293, at *3 (quoting *Hot Shot Servs., Inc. v. Nanney*, No. 9-cv-629, 2010 WL 11493293, at *2 (D.N.M. Apr. 23, 2010) (collecting cases)).

Here, the parties do not offer competing interpretations of the forum selection clause, but rather present theories on why it should or should not be enforced. Therefore, the court applies federal law in its analysis.

## DISCUSSION

MSC argues IGS's causes of action against it should all be dismissed because the claims are time-barred under COGSA's statute of limitations and because ISG sued the wrong MSC entity.[23] Alternatively, MSC argues the case should be transferred to the Southern District of New York according to the Waybill's forum selection clause.[24] Because a venue transfer would preclude the court from ruling on the other issues, the court first addresses MSC's forum selection clause argument.

### I.    Forum Selection Clause

MSC argues for a change in venue because the Waybill contains a forum selection clause that requires all claims to be filed in the U.S. District Court for the Southern District of New York ("S.D.N.Y.") under 28 U.S.C. § 1404(a).[25] IGS disagrees, arguing the clause is invalid because the Waybill, which includes the forum selection clause, is unconscionable, but even if the clause were enforceable, change in venue would violate fairness and judicial economy.[26]

The United States Supreme Court has held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[27] This "presumption of validity is based on the

---

[23] Mot. to Dismiss 20–24.
[24] *Id.* 25–28.
[25] *Id.* 26, Ex. A § 10.3.
[26] Opp'n 15–18.
[27] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), *superseded by statute as stated in Delta Pegasus*, 2022 WL 4536757 at *5 n.68. *See also Health Grades, Inc. v. Hamot Med. Ctr.*, 05-cv-02163, 2006 WL 8454634, at

5

rationale that parties validly consent to be sued in the jurisdiction by virtue of being parties to the contract containing the forum selection clause."[28] "[A] party contesting that presumption bears a heavy burden of proof."[29]

### A. Validity of the Forum Selection Clause

IGS presents two arguments to challenge the forum selection clause. First IGS argues the forum selection clause is invalid because the Waybill's terms and conditions, which include the forum selection clause, are unconscionable.[30] An argument at that level of generality is insufficient. For example, "in the Tenth Circuit 'a plaintiff seeking to avoid a forum selection clause on a fraud theory must plead fraud going to the specific provision,' even where it is established that the contract as a whole was 'procured through fraud.'"[31] The court must separately inquire whether the forum selection clause, not just the agreement in which it resides, "was the product of fraud or coercion."[32] In *Niemi v. Lasshofer*, the Tenth Circuit did not invalidate a forum selection clause in a loan agreement when it determined that the agreement as a whole had been procured by fraud.[33] Instead, it analyzed the forum selection clause separately

---

*2 (D. Colo. Feb. 27, 2006) ("Forum selection clauses are *prima facie* valid, and a party contesting that presumption bears a heavy burden of proof.").

[28] *Delta Pegasus*, 2022 WL 4536757, at *6 (quoting *Bremen*, 407 U.S. at 10–11 (internal quotation marks omitted)). *See also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) ("When the parties have agreed to a valid forum-selecting clause, a district court should ordinarily transfer the case to the forum specified in that clause.").

[29] *Health Grades, Inc.*, 2006 WL 8454634, at *2; *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 658 (1992).

[30] Opp'n 7–11.

[31] *Delta Pegasus*, 2022 WL 4536757, at *7 (quoting *Niemi v. Lasshofer*, 770 F.3d 1331, 1351–52 (10th Cir. 2014)) (cleaned up).

[32] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974).

[33] *Niemi*, 770 F.3d at 1351.

before concluding that the evidence was "sufficient to establish that the forum selection clause itself was fraudulently induced."[34]

Granted, IGS argues the clause is invalid because of unconscionability, not fraud. But the principle—that the basis for the invalidity of the clause must be alleged as to the clause specifically and not just to the contract generally—remains the same.[35] For example, in *Beltran v. AuPair, Inc.*, the Tenth Circuit analyzed the forum selection clause separately from the encompassing agreements.[36] The plaintiffs in *Beltran* sought to invalidate arbitration agreements on the grounds of unconscionability.[37] The court assessed the clauses in the agreements separately and concluded, in relevant part, that although "the agreements have significant substantive unconscionability[,] . . . neither the fee shifting clause nor the forum selection clause is unconscionable."[38]

Here, IGS has not alleged that the forum selection clause itself is unconscionable. In fact, its discussion about unconscionability does not include any mention of the forum selection clause.[39] Instead, IGS argues in its procedural unconscionability section that the Waybill it received did not have the terms on the reverse side that it claimed to, that the Waybill's statement "[s]ee website for larger version of reverse" suggests that the terms were not negotiable, and that the terms are difficult to find even on the website.[40] IGS also argues that the Waybill was "printed in textbook boilerplate form" and allowed only the shipper, not the consignee (IGS), to

---

[34] *Id.* at 1352.
[35] *See Beltran v. AuPair Care, Inc.*, 907 F.3d 1240, 1262 (10th Cir. 2018).
[36] *See id.*
[37] *Id.* at 1252–63.
[38] *Id.* at 1262.
[39] Opp'n 7–11.
[40] *Id.* 7.

object to the Waybill's terms.[41] In its substantive unconscionability section, IGS similarly focuses on the Waybill without mention of the forum selection clause, claiming that the Waybill's terms unduly reduce MSC's liability and that COGSA's one-year statute of limitations and $500-per-package liability cap were unconscionable.[42] Because IGS did not argue that the forum selection clause itself was unconscionable, this argument fails.

### B. Enforcement of the Forum Selection Clause

Second, IGS makes a policy argument that even if the forum selection clause is enforceable, interests of public policy, fairness, and judicial economy weigh against enforcing it.[43] A party challenging a valid forum selection clause bears a "heavy burden of proof" to "demonstrate that the forum selection clause should not be enforced."[44] A challenger faces such a stringent standard because courts view a valid forum selection clause as "an indispensable element in international trade, commerce, and contracting."[45]

Here, IGS must show "that transferring the case to [New York] will make litigation so gravely difficult and inconvenient that the clause will, for all practical purposes, deprive [IGS] of [its] day in court."[46] IGS attempts this showing with several points. First, IGS asserts that "the plaintiff's choice of forum should rarely be disturbed," and since TD is the plaintiff in this case and chose to file in Utah, the court should "honor the plaintiff's choice of forum" by retaining

---

[41] *Id.* 7–9. MSC used intermediary Interglobo Customs Broker Inc. as the shipper. *See* Mot. to Dismiss 10; Opp'n 9.
[42] *Id.* 9–11.
[43] Opp'n 15–19.
[44] *Veach v. Gen. RV Ctr.*, No. 2:19-cv-539, 2020 WL 9258452, at *5 (D. Utah May 27, 2020) (quoting *Zions First Nat. Bank v. Allen*, 688 F. Supp. 1495, 1498 (D. Utah 1988)).
[45] *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp*, 561 U.S. 89, 109–10 (2010) (quoting *Bremen*, 407 U.S. at 13–14).
[46] *Id.*

jurisdiction.[47] This case, at first blush, seems to present a clash between two important principles in law: "that the plaintiff is the master of the complaint"[48] and that "courts should 'respect the parties' freedom to contract.'"[49] However, under "federal common law" that governs enforceability of forum selection clauses, "the plaintiff's choice of forum merits no weight" when a valid forum selection clause is involved.[50] This is so because a forum selection provision is "an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction."[51] Accordingly, this argument fails.[52]

Second, IGS argues that even if MSC's Waybill is binding upon IGS, it is not binding on TD, so a venue transfer would require IGS's claims against MSC to be severed from the other claims in this action.[53] However, IGS provides no authoritative case law or analysis to support this contention.[54] Thus, this argument also fails.

Finally, IGS argues that public interest factors weigh against transfer because Utah has more connections to the case than New York.[55] Be that as it may, "whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting."[56] According to the United State Supreme Court, the "public-interest factor . . . will rarely defeat a transfer motion" because "[t]he calculus

---

[47] *Onset Fin., Inc. v. Westchester Fire Ins. Co., Inc. v. Family Practice of Atlanta Med. Grp.*, No. 2:16-cv-0063, 2016 WL 7410576, at *3 (D. Utah Dec. 22, 2016).
[48] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).
[49] *Peterson & Simpson v. IHC Health Servs., Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716, 720; *Power Block Coin, LLC v. Song*, 705 F. Supp. 3d 1293, 1315 (D. Utah Dec. 5, 2023).
[50] *Veach*, 2020 WL 9258452, at *5 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 63).
[51] *Yavuz*, 465 F.3d at 429–30.
[52] The court also notes that the Plaintiff, TD, did not oppose this motion.
[53] Opp'n 17.
[54] *Id.*
[55] *Id.* 18.
[56] *Atl. Marine Constr. Co.*, 571 U.S. at 64.

changes . . . when the parties' contract contains a valid forum-selection clause" and they are given less weight.[57] Thus, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."[58] Granted, IGS argues this is an exceptional case because it did not receive the terms and conditions that include the forum selection clause in the Waybill.[59] The Waybill directs the reader to the reverse for "terms continued" and to the website "for [a] large version of the reverse."[60] Whether IGS saw the terms or not, they were still part of its contract with MSC. "As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence."[61] This contractual dispute raises factual issues that the court should not reach at this stage and fails to establish this as one of "the most exceptional cases" as required for the court to set aside the forum selection clause. For these reasons, this argument likewise fails.[62]

In sum, IGS has not successfully challenged the validity and enforceability of the forum selection clause. Therefore, the court may not rule on the Motion to Dismiss and leaves the arguments related to it for the transferee court's consideration.

## ORDER

Accordingly, MSC's Motion to Dismiss or in the Alternative Motion to Transfer Venue is HEREBY GRANTED IN PART.[63] The court GRANTS the motion to transfer venue. The case is

---

[57] *Atl. Marine Constr. Co.*, 571 U.S. at 63–64.
[58] *Id.* at 62–63.
[59] Opp'n 4.
[60] Mot. to Dismiss, Attach. 1; Opp'n, Attach. 5.
[61] *Hugger-Mugger, LLC v. Netsuite, Inc.*, No. 2:04-cv-592, 2005 WL 2206128, at *5 (D. Utah Sept. 12, 2005) (cleaned up); *see also Local Pages of Nev., LLC v. Plumb Line Mech., Inc.*, 2024 UT App 70, ¶ 21, 549 P.3d 632 (stating that "a party who fails to read a contract may still be bound by its terms").
[62] *Atl. Marine Constr. Co.*, 571 U.S. at 62–63.
[63] ECF No. 30.

hereby TRANSFERRED to the United States District Court for the Southern District of New York. This court therefore lacks jurisdiction to consider MSC's Motion to Dismiss. MSC may re-file its Motion to Dismiss with the transferee court.

Signed November 5, 2025.

BY THE COURT

_____
David Barlow
United States District Judge